**REISSUED FOR PUBLICATION**
**JUNE 7 2017**
**OSM**
**U.S. COURT OF FEDERAL CLAIMS**

ORIGINAL

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 15-685
Filed: May 5, 2017

FILED
MAY -5 2017
OSM
U.S. COURT OF
FEDERAL CLAIMS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | Special Master Sanders |
| PENNY WALDEN, | * | |
| | * | Attorneys' Fees and Costs; |
| Petitioner, | * | Contested Reasonable Basis. |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * | | |

Penny Walden, Pro Se, Chandler, AZ, for Petitioner.
Christine M. Becer, United States Department of Justice, Washington, DC, for Respondent.

**DECISION DENYING ATTORNEYS' FEES AND COSTS**[1]

On July 1, 2015, Penny Walden ("Petitioner") petitioned for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa- 10 to 34 (2012) ("Vaccine Act").[2] Petitioner alleged that she developed fibromyalgia because she received the Measles-Mumps-Rubella ("MMR") vaccine on October 18, 2012. Petition ("Pet.") at 1-2. Petitioner was initially represented by counsel; however, Petitioner's counsel filed a Motion to Withdraw on April 4, 2016. Motion to Withdraw as Att'y, ECF No. 26.

---

[1] This decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 *et seq.* (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

1

Petitioner's counsel then filed a Motion for Interim Attorneys' Fees on July 19, 2016. Motion Interim Att'ys' Fees ("Mot."), ECF No. 33. No action was taken on this motion while the case remained pending. On October 14, 2016, Special Master Hamilton-Fieldman issued a decision (at Petitioner's request) concluding proceedings in the above captioned matter. Decision, ECF No. 40. The pending Motion for Interim Fees was then converted to a Motion for Final Fees shortly thereafter, and is now ripe for review. Order (Dec. 29, 2016), ECF No. 43. For the reasons set forth below, the undersigned finds that the petition was not supported by a reasonable basis. The motion for an award of attorneys' fees is therefore DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioner's Background and Medical History

Petitioner was a 50-year-old hospital employee when she received the MMR vaccine as required by her employer on October 18, 2012. Pet'r's Ex. 5 at 4. Petitioner has a prior medical history of gastroesophageal reflux disease and gall stones, including an emergency room visit on March 13, 2012, due to abdominal pain. Pet'r's Ex. 7 at 14. On November 19, 2012, approximately one month following her vaccination, Petitioner called occupational health to report that she had achiness and pain in her neck, knees, and legs that started the previous week. Pet'r's Ex. 5 at 5. Petitioner told the nurse that she believed her pain was a result of the MMR vaccine. *Id.* Petitioner was instructed to take nonsteroidal anti-inflammatory drugs for a week and schedule an appointment with her primary care physician if her symptoms did not improve. *Id.* On November 27, 2012, Petitioner saw Dr. Kaliani, an internist at the Carle Clinic, for joint pain in both ankles, knees, elbows and neck. There were no complaints of swelling. Pet'r's Ex. 6 at 10. Petitioner reported a history of anxiety, weight gain, insomnia, hair loss, blurred vision, constipation, and skin itching, and was ultimately diagnosed with mild anemia. *Id.* Petitioner asserts that during this examination, Dr. Kaliani told her "the virus is in [her] and there is nothing [she] can do about it, and hopefully it will go away." Pet'r's Ex. 1 at ¶ 6. There is no account of this conversation in the medical records.

Petitioner followed her visit with a phone call to Dr. Kaliani on December 4, 2012. Pet'r's Ex. 4 at 3. Petitioner asserts that during this call, she was told to hold off on her flu shot "due to concern over MMR causing Petitioner's recent symptomology." Mot. at 3. The medical records from the call on December 4, 2012 document a diagnosis of amenorrhea and Petitioner's prior anemia, and note that Petitioner can delay the flu shot. The records do not, however, include any complaints of joint and/or muscle pain or achiness, or mention the MMR vaccine. Pet'r's Ex. 4 at 3.

On May 1, 2013, Petitioner was treated at the Carle Foundation Hospital for injuries suffered when she fell off a ladder. Pet'r's Ex. 6 at 16. She had been taking NSAID for aches and pain, and was referred to a gastroenterologist due to her report of spitting up blood. *Id.* at 17. On September 9, 2013, Petitioner went to the emergency room with complaints of abdominal pain and was diagnosed with gastritis. Pet'r's Ex. 6 at 33-36. She reported "no back, joint, or muscular complaints." Pet'r's Ex. 6 at 34.

On November 15, 2013, Petitioner returned to Dr. Kaliani and was diagnosed with peptic ulcers and a hiatal hernia. Pet'r's Ex. 4 at 4-5. Petitioner reported stress and anxiety for the preceding two years. Pet'r's Ex. 4 at 2. On May 29, 2014, Petitioner saw rheumatologist, Dr. Katz. Pet'r's Ex. 3 at 6. Petitioner described pain in her ankles, knees, elbows, wrists, and neck that began in November of 2012. *Id.* Dr. Katz diagnosed Petitioner with fibromyalgia after extensive testing revealed mild osteoarthritis in the hands and some disc-space narrowing in the cervical spine. *Id.* at 19.

Petitioner followed up with Dr. Katz in June and October of 2014. Pet'r's Ex. 3. Her complaints were consistent during both visits and included: low energy/exhaustion, poor sleep, and unspecified pain. *Id.* On April 29, 2015, Petitioner was seen by Dr. Sackett, DO. Pet'r's Ex. 10 at 8-10. Dr. Sackett did not confirm Petitioner's diagnosis of fibromyalgia and found that Petitioner suffered from Vitamin D deficiency and dry eyes. Pet'r's Ex. 10 at 9. In May and June of 2015, Petitioner saw neurologist Dr. Yu for headache, blurred vision, neck and back pain, insomnia, paresthesia and arthralgia. Pet'r's Ex. 8 at 9. Petitioner was diagnosed with memory disorder, arthralgia, backache, bilateral blurry vision, cervicalgia, fibromyalgia muscle pain, headache, and insomnia. Pet'r's Ex. 8 at 10.

## B. Claim Procedure and Dismissal

As previously noted, Petitioner filed her claim on July 1, 2015, alleging that she developed fibromyalgia as a direct result of receipt of an MMR vaccine administered approximately eighteen months prior. Pet. at 1-5. Despite the time lapse, Petitioner believed that there was a connection between the vaccine administration and her injuries, and had her initial call with counsel, Mr. Downing, regarding a potential claim in December of 2014. Pet'r's Ex. A at 1, ECF No. 33-1. According to his billing records, Petitioner's counsel spent six months preparing to file Petitioner's claim, including conversing with Petitioner regarding her medical history and current symptoms, analyzing Petitioner's medical records, and reviewing prior cases brought pursuant to the Vaccine Act that involve the MMR vaccine and fibromyalgia. *Id.* at 1-2. On July 20, 2015, Petitioner filed the first set of medical records. Pet'r's Exs. 1-7, ECF No. 7.

Petitioner continued to file medical records for several months and filed a Statement of Completion on October 16, 2015. ECF No. 17. On December 18, 2015, Respondent filed a Rule 4(c) Report. Resp't's Report, ECF No. 19. In it, he argued that Petitioner had not provided a medical theory of causation, established a sequence of cause and effect, or detailed a temporal relationship between the vaccine and the alleged injury. *Id.* at 5-7. Respondent identified Petitioner's initial medical evaluation for joint pain in November of 2012, and noted that further complaints of joint pain, or corresponding treatment, did not appear in the medical record again until the May 2014 fibromyalgia diagnosis. *Id.* at 7.

Following Respondent's report, Special Master Hamilton-Fieldman scheduled a status conference with the parties for January 14, 2016. During that conference the special master expressed several concerns with the viability of Petitioner's case. *See* Scheduling Order (Jan. 15, 2016), ECF No. 20. She was concerned about onset, the lack of medical records regarding any symptoms commonly associated with fibromyalgia between November 2012 and May 2014, and

3

whether there was even a reasonable basis to file this claim. *Id.* Special Master Hamilton-Fieldman ordered Petitioner to file a status report or an appropriate motion by February 11, 2016. *Id.*

Petitioner filed two motions for extension of time that were granted by Special Master Hamilton-Fieldman, and the Court set Petitioner's new deadline for April 7, 2016. Order (Mar. 10, 2016), ECF No. 25. On April 4, 2016, Petitioner's counsel moved to withdraw as attorney of record. ECF No. 26. Two days later, Special Master Hamilton-Fieldman granted counsel's motion and ordered Petitioner to file a status report updating the Court on her progress in securing a different attorney by June 22, 2016. Order, ECF No. 27. Petitioner requested additional time to file her status report and Respondent did not object. *See* Informal Communication, docketed June 20, 2016. Special Master Hamilton-Fieldman extended Petitioner's deadline to file her status report to August 9, 2016, but Petitioner failed to meet that deadline. Status Report Order, ECF No. 29.

After receiving no further communication from Petitioner, Special Master Hamilton-Fieldman issued an order dated September 14, 2016, for Petitioner to show cause as to why her petition should not be dismissed by October 5, 2016. Order to Show Cause at 1, ECF No. 37.

On October 11, 2016, Petitioner filed a response and stated that she was "no longer interested in pursuing this claim due to [her] failing health," citing "mental and physical stress." Resp. to Order to Show Cause at 1, ECF No. 39. Petitioner further admitted that, after speaking with several physicians, she was unable to find anyone who would opine in favor of causation." *Id.* On October 14, 2016, Special Master Hamilton-Fieldman dismissed Petitioner's claim for failure to prosecute and insufficient proof. Decision, ECF No. 40.

### C. Motion for Attorneys' Fees and Costs

On June 17, 2016, Petitioner's counsel filed an Application for Standing and Leave of Court to File Application for Interim Attorneys' Fees and Costs. Motion for Leave to File Application, ECF No. 28. Special Master Hamilton-Fieldman granted counsel's motion, and counsel filed his Motion for Interim Attorneys' Fees on July 19, 2016. Order, ECF No. 32; Mot. Interim Att'ys' Fees ("Mot."), ECF No. 33. In his motion, Petitioner's counsel responded to the concerns that Special Master Hamilton-Fieldman voiced during the January 14, 2016 conference. Mot. at 8. Counsel pointed to the call that Petitioner placed to occupational health on November 19, 2012 as evidence of contemporaneous medical records regarding initial symptoms. *Id.* He also stated, "there are multiple other locations in the medical records where [Petitioner] stated that her fibromyalgia symptoms began after the MMR vaccination." *Id.* at 8-9. With respect to Special Master Hamilton-Fieldman's second concern, Petitioner's counsel did not deny that there was an extended period of time between onset of symptoms and diagnosis. *Id.* at 9. Instead, counsel asserted that it takes a while to diagnose fibromyalgia (minimum three months), and noted that this condition is often misdiagnosed. *Id.* He contended that Petitioner was misdiagnosed, despite her symptoms and belief that her injury was vaccine-related. *Id.* at 9-10. Lastly, counsel argues that Petitioner's condition is not fully documented in her medical records. *Id.* at 10. Counsel stated that Petitioner did not mention the joint pain and related symptoms at every doctor's visit she had because it is "reasonable to believe that an individual in acute stress

4

would only focus on the major symptom." *Id.* at 11. Counsel "assume[d] that Petitioner's doctor was probably only interested in that single issue, as well." *Id.*

Petitioner's counsel requested $14,879.50 in attorney's fees and $1,007.84 in costs for a total award of $15,957.34. *Id.* at 14. Counsel billed at an hourly rate of $350.00 for himself, $195.00 for each of the two associates, and $100.00 for each of the two legal assistants. *Id.* at 15-16.

Petitioner's counsel attached to his motion a detailed accounting of the time spent on Petitioner's claim. Pet'r's Ex. A, ECF No. 33-1. A careful review of counsel's billable hours revealed that counsel spent a total of 46.5 hours or 58% of his total time working on this case, on pre-filing matters. *Id.* at 1-2. In fact, Petitioner's counsel worked on Petitioner's case for approximately seven months prior to filing her Petition. The following line items are of particular relevance:

| Entry Date | Attorney | Billing entry description | Hours Billed | Amount Billed |
|---|---|---|---|---|
| 2/24/2015 | ADD | Follow up call with client re: interview with client for her witness statement information, missing medical records, and additional information. | 0.8 | $280.00 |
| 5/7/2015 | ADD | Review of cases as to MMR vaccine and arthralgia/fibromyalgia to establish a mechanism of injury and drafting changes to client's statement. | 0.9 | $315.00 |
| 5/27/2015 | JCR | Revise and finalize latest draft of Witness Statement of [Petitioner] to conform with Snyder decision and cases discussing fibromyalgia caused by MMR vaccination. | 1.6 | $312.00 |
| 5/28/2015 | ADD | Call with [Petitioner] re: ongoing treatment and discussion of treating doctors stating vaccine related; discussion for incorporation of this information into her witness statement. | 0.7 | $245.00 |
| 6/26/2015 | JCR | Research and analyze case law regarding prima facie fibromyalgia onset. | 1.2 | $234.00 |

*See* Ex. A at 2, 6, 7.

Respondent filed a Response to Counsel's Motion and argued that interim fees were not appropriate in this case. Resp't's Resp. (Aug. 3, 2016), ECF No. 34. Respondent also asserted that this claim lacked reasonable basis. *Id.* at 1. Petitioner's counsel replied to Respondent on August 22, 2016. Pet'r's Reply, ECF No. 36. Counsel also filed a supplement to his reply. Pet'r's Ex. J, ECF No. 38. Respondent's first objection has been rendered moot, as the motion is being adjudicated after the merit of Petitioner's claim was resolved. Furthermore, Special

5

Master Hamilton-Fieldman converted the interim fees motion to a motion for final fees on December 29, 2016. *See* Order, ECF No. 43.

## II.   STANDARDS FOR ADJUDICATION

Even when a petitioner in the Vaccine Program does not prevail on his or her claim and does not receive compensation, a special master may award attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Respondent does not contest that the petition was filed in good faith. *See generally* Resp't's Resp. There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is met.

In contrast, Respondent *does* contest the reasonable basis for this petition. The Federal Circuit has not interpreted "reasonable basis" or provided any guidance as to how petitioners satisfy the reasonable basis standard. *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 285 (2014) (citing *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 153 (2012)). In the absence of guidance, special masters have taken different approaches. *Silva v. Sec'y of Health & Human Servs.*, No. 10-101V, 2012 WL 2890452, at *8-9 (Fed. Cl. Spec. Mstr. June 22, 2012), *mot. for rev. denied*, 108 Fed. Cl. 401 (2012).

Recent decisions have examined whether any evidence, when submitted, supports "the claim for which the petition was brought." The statute's use of the phrase "reasonable basis for which the petition was brought" is consistent with other portions of the statute that require the petition to be filed with evidence. *See Chuisano v. Sec'y of Health & Human Servs.*, No. 07-452V, 2013 WL 6234660, at *8-10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), *mot. for rev. denied*, 116 Fed. Cl. 276 (2014). Evidence that is relevant to this inquiry may include medical records, affidavits from percipient witnesses, and opinions from retained experts. *See* 42 U.S.C. § 300aa-11(c). Special Masters should look to the "totality of the circumstances" when reviewing evidence for a reasonable basis. *Chuisano*, 116 Fed. Cl. at 286. In considering the totality of circumstances, factors to be examined are "'the factual basis, the medical support, and jurisdictional issues,' and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The nature and extent of counsel's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health and Human Servs.*, 24 Cl. Ct. 255, 258-59 (1991)). "The burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011), *decision on remand vacated*, 2012 WL 1884703 (May 3, 2012).

Upon review of the records and the parties' motions, I do not find that Petitioner demonstrated a reasonable basis for her claim. For the following reasons, I deny Petitioner's request for attorneys' fees and costs.

### III. DISCUSSION

Petitioner alleged that she developed fibromyalgia, a condition characterized by "pain and stiffness in the muscles and joints," as a direct result of her receipt of the MMR vaccine on October 18, 2012. *See* Statement of Penny Walden, Pet'r's Ex. 1; DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 703 (32nd ed. 2012). Petitioner stated that she felt "some fatigue, swollen neck glands, and minor joint pains for a period of 12-14 days." Pet'r's Ex. 1 at 1. Additionally, Petitioner stated that she developed flu-like symptoms that progressed until she awoke with excruciating joint pain, blurred vision, head pain, and general weakness on the morning of November 13, 2012. *Id.* Despite Petitioner's prolonged symptoms, she did not seek treatment from a medical professional until November 19, 2012. Pet'r's Ex. 5 at 5. Furthermore, Petitioner did not seek additional medical treatment or follow-up care for any of her symptoms. Even when Petitioner did seek treatment for unrelated medical issues in May and June of 2013, she did not complain of achiness or joint pain or muscle pain. Pet'r's Ex. 6 at 12-28. Petitioner did not complain of joint pain again until she was diagnosed with fibromyalgia in May of 2014, more than eighteen months after her vaccination. Pet'r's Ex. 3 at 19.

In determining whether to award compensation, the Vaccine Act directs special masters to base decisions upon "medical records or opinions." 42 U.S.C. § 300aa-13(a). Likewise, medical records or opinions are a foundation for evaluating the reasonable basis for the claim in the petition. *See also Stokes v. Sec'y of Health and Human Servs.*, No. 14-433V, 2017 WL 1483876, at *9 (Fed. Cl. Spec. Mstr. Apr. 4, 2017). Petitioner has not presented any opinions or reports of retained medical experts. Furthermore, Petitioner has not cited (and the undersigned cannot locate) *any* medical record indicating that a medical professional attributed her joint pain to her receipt of the MMR vaccine. It is certainly true that some doctors and other health care providers included the MMR vaccination in Petitioner's medical history; however, chronology and causation are not synonymous. *Caves v. Sec'y of Health and Human Servs.*, 100 Fed. Cl. 119, 139-40 (2010), *aff'd without opinion*, 463 Fed. App'x 932 (Fed. Cir. 2012).

In her Decision for Dismissal, Special Master Hamilton-Fieldman quoted Respondent's filings and agreed that "Petitioner had a single medical evaluation for joint pain on November 27, 2012, with no subsequent follow-up visits or complaints for ongoing symptoms in 2012 or 2013." Decision at 1-2. Special Master Hamilton-Fieldman also reminded Petitioner that she had identified this evidentiary issue with Petitioner's claim in a status conference held on January 14, 2016. *Id.* at 2. During that conference, Special Master Hamilton-Fieldman discussed the "lack of contemporaneous medical records, the length of time it took for Petitioner to receive a diagnosis, and the absence of documentation of symptoms of Petitioner's alleged conditions, as well as whether Petitioner's counsel had a reasonable basis to file this claim." *Id.*

In her Motion for Interim Attorneys' Fees, Petitioner responded to Special Master Hamilton-Fieldman's concerns by reiterating that she was told "the virus is in [her] and there is

7

nothing [she] can do about it, and hopefully it will go away." Mot. at 9. Petitioner compared her case to others wherein a claimant was told "that there was nothing that could be done for his symptoms" and the petitioner consequently "chose to stop going to doctor's appointments." *Id.* at 11. In those cases, witness affidavits, work records, and even receipts for over-the-counter treatment may provide the evidence necessary to support a petitioner's claim regarding type of injury and duration. This case, however, is distinguishable from those, due to counsel's admitted lack of "additional investigatory work on the matter [to] identify additional fact witnesses" and corroborate Petitioner's statements. Mot. at 11. Petitioner's counsel concedes that investigatory work was not done post-filing to collect additional evidence. *Id.* There is also no adequate explanation of why counsel did not conduct a preliminary investigation to spot these issues prior to Petitioner filing her petition. Petitioner's claim was filed with several months remaining before the statute of limitations became a concern. Counsel was under no pressure to file the case without adequate review, to preserve Petitioner's ability to file. In fact, Petitioner's motion for attorneys' fees includes billing for dates in February and March of 2015 that counsel spent reviewing medical records, and dates in May of 2015 that counsel spent "to establish mechanism of injury" and "discussion [with Petitioner] of treating doctors stating [injury is] vaccine related." Pet'r's Ex. A at 1-2, ECF No. 33-1. It is clear that Petitioner's counsel spent several hours researching other claims that alleged joint conditions resulting from MMR vaccinations. *Id.* at 2. And yet, at no time prior to the dismissal of this case did Petitioner file "any persuasive evidence that Petitioner's injuries were caused by a vaccination." Decision, ECF No. 40. Presumably, counsel would have noted after his review of the medical records and subsequent conversation with Petitioner that no treating physician had attributed Petitioner's fibromyalgia to the MMR vaccine, and no one had agreed to produce an expert medical report.

The record before me demonstrates that counsel could have determined the claim's viability in light of the lack of any explicit or implicit finding of causation by a treating physician, and the inability to identify an expert to provide a plausible theory of causation before the petition was filed. I note the years of experience that Petitioner's counsel has had in the Vaccine Program and his assessment of numerous cases. It is reasonable to expect that a seasoned participant in Vaccine Act cases would be able to conduct, or oversee, the legal research necessary to evaluate a claim when he had the time to do so. *Smith v. Sec'y of Health & Human Servs.*, No. 15-990V, 2016 WL 4272357, at *5 (Fed. Cl. Spec. Mstr. June 22, 2016).

### IV. CONCLUSION

Petitioners in Vaccine Act litigation must show that their petition was filed in good faith and on a reasonable basis in order to be eligible for attorneys' fees and costs, if they do not prevail on their claim. Petitioner in the present case did not establish a reasonable basis for her petition. Petitioner's Motion for Attorneys' Fees is therefore **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[3]

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

*(signature)*
Herbrina D. Sanders
Special Master